## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| JOSE LUIS VAZQUEZ-ALFARO, on behalf of himself and all others similarly situated, | Case No. 3:23-cv-01355 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| PENHALL COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Jose Luis Vazquez-Alfaro ("Plaintiff"), on behalf of himself and all others similarly situated, states as follows for his class action complaint against Defendant, Penhall Company ("Penhall" or "Defendant"):

### INTRODUCTION

1.     On December 28, 2022, Penhall, a construction company in Irving, Texas that provides concrete-cutting and removal services, lost control over its computer network and the highly sensitive personal information stored on the computer network in a data breach by cybercriminals ("Data Breach"). The number of total breach victims is unknown, but on information and belief, the Data Breach has impacted at least thousands of current and former employees.

2.     On information and belief, the Data Breach occurred on December 28, 2022. Following an internal investigation, Defendant learned cybercriminals gained unauthorized access to current and former employees' personally identifiable information ("PII").

3.      On or about February 15, 2023– almost two months after the Data Breach occurred–Penhall finally notified Plaintiff and Class Members about the Data Breach ("Breach Notice"), an example of which is attached as Exhibit A.

4.      Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff and the putative class. Defendant failed to maintain reasonable security safeguards or protocols to protect the Class's PII—rendering them easy targets for cybercriminals.

5.      Defendant's Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its victims how many people were impacted, how the breach happened, or why it took the Defendant almost two months to begin notifying victims that cybercriminals had gained access to their highly private information.

6.      Defendant's failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

7.      Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

8.      In failing to adequately protect victims' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated federal law, state law, common law and harmed an unknown number of its current and former employees.

9.      Plaintiff and the Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant

2

with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10.    Plaintiff Jose Vazquez-Alfaro is a former Penhall employee and Data Breach victim. Mr. Vazquez-Alfaro worked for Penhall from 2021 until 2022.

11.    The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

## PARTIES

12.    Plaintiff, Jose Vazquez-Alfaro, is a natural person and citizen of the state of Washington, residing in Des Moines, Washington, where he intends to remain.

13.    Defendant, Penhall, is incorporated in California, with its principal place of business at 1212 Corporate Dr., Suite 500, Irving, TX 75038-2506, which is located in the Dallas Division of the Northern District of Texas. Defendant Penhall can be served through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorp., At 211 E. 7th Street Suite 620 Austin, TX 78701.

## JURISDICTION & VENUE

14.    This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and Plaintiff and Defendant are citizens of different states.

15.    Penhall is incorporated in California and maintains its principal place of business in Texas at 1212 Corporate Dr., Suite 500, Irving, TX 75038-2506, which is located in the Dallas Division of the Northern District of Texas.

16.    This Court has personal jurisdiction over Penhall because it is a citizen in the

Northern District of Texas and maintains its headquarters and principal place of business in the Dallas Division of the Northern District of Texas.

17.    Venue is proper because Penhall maintains its headquarters and principal place of business in the Dallas Division of the Northern District of Texas.

## FACTUAL ALLEGATIONS

### Penhall

18.    Penhall is a construction company that touts itself as "the nation's leader in concrete cutting and removal resources".[1] It boasts over $250 million in revenue.[2]

19.    On information and belief, Penhall accumulates highly private PII of its employees.

20.    On information and belief, Penhall maintains former employees' PII for years after the employee-employer relationship is terminated.

21.    In collecting and maintaining its employees' PII, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

22.    Indeed, Penhall claims in its privacy policy that it "maintains reasonable security procedures and practices, including administrative, technical and physical safeguards designed to assist in protecting the Personal Information collected against accidental, unlawful or unauthorized destruction, loss, alteration, access, disclosure or use."[3]

23.    As a "leader" in its industry, Penhall understood the need to protect its current and former employees' PII and prioritize its data security.

24.    Despite recognizing its duty to do so, on information and belief, Penhall has not

---

[1] Penhall, https://www.penhall.com/ (last visited June 14, 2023).
[2] Penhall Company, Zippia, https://www.zippia.com/penhall-careers-34551/revenue/ (last visited June 14, 2023).
[3] Privacy Policy, Penhall, https://careers.penhall.com/privacy-policy#How-We-Protect-Personal-Information (last visited June 14, 2023).

implemented reasonably cybersecurity safeguards or policies to protect employee PII or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Penhall leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to employees' PII.

***Penhall Fails to Safeguard Employees' PII***

25.    Plaintiff is a former employee of Penhall.

26.    As a condition of employment with Penhall, Plaintiff provided Defendant with his PII, including but not limited to his name, driver's license, date of birth, and Social Security number. Defendant used that PII to facilitate its employment of Plaintiff, including payroll, and required Plaintiff to provide that PII to obtain employment and payment for that employment.

27.    On information and belief, Penhall collects and maintains employees' unencrypted PII in its computer systems.

28.    In collecting and maintaining PII, Defendant implicitly agreed that it will safeguard the data using reasonable means according to their internal policies, common law, state law and federal law.

29.    According to the Breach Notice as well as information posted on Penhall's website, Penhall claims to have "experienced a data security incident during which some of our systems were encrypted" on December 28, 2022. Penhall further admits that an internal investigation revealed that "personal information [that] was stored on a computer system [] was accessed by an unauthorized individual". Ex. A.

30.    In other words, the Data Breach investigation revealed Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its employees' highly private personal information, including dates

5

of birth and social security numbers.

31.    On or about February 15, 2023–almost two months after the Data Breach occurred–
Penhall finally began notifying Plaintiff and Class Members about the Data Breach. However,
Plaintiff did not receive a Breach Notice until March 2023.

32.    Despite its duties and alleged commitments to safeguard PII, Defendant, a self-
proclaimed leader in its industry, did not in fact follow industry standard practices in securing
employees' PII, as evidenced by the Data Breach.

33.    In response to the Data Breach, Penhall contends that it has "implemented
additional security measures to enhance its existing cybersecurity protocols." Ex. A. Although
Defendant fails to expand on what these alleged "additional security measures" are, such measures
should have been in place before the Data Breach.

34.    On information and belief, Penhall has offered a one year of complimentary credit
monitoring services to victims, which does not adequately address the lifelong harm that victims
will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such
as Social Security numbers.

35.    Even with one year of credit monitoring services, the risk of identity theft and
unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent
activity resulting from the Data Breach may not come to light for years.

36.    Cybercriminals need not harvest a person's Social Security number or financial
account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII.
Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other
sources to create "Fullz" packages, which can then be used to commit fraudulent account activity
on Plaintiff's and the Class's financial accounts.

37.     On information and belief, Penhall failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its employees' PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of Which Defendant was on Notice.***

38.     It is well known that PII, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

39.     In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[4]

40.     In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Penhall knew or should have known that its electronic records would be targeted by cybercriminals.

41.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

42.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

43.     In the years immediately preceding the Data Breach, Defendant knew or should

---

[4] Data breaches break record in 2021, CNET (Jan. 24, 2022), https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed May 04, 2023).

have known that Defendant's computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

44.    In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[5]

45.    In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[6]

46.    In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[7]

47.    This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities

---

[5]    High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations, FBI, available at https://www.ic3.gov/Media/Y2019/PSA191002  (last accessed May 04, 2023).
[6]    Ransomware mentioned in 1,000+ SEC filings over the past year, ZDNet, https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed May 04, 2023).
[7]    Ransomware Guide, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide  (last accessed May 04, 2023).

such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

48.     In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of thousands of its current and former employees in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendant's type of business had cause to be particularly on guard against such an attack.

49.     Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

50.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its employees' Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff's Experience and Injuries***

51.     From approximately 2021 until 2022, Plaintiff Vazquez-Alfaro was employed by Defendant.

52.     As a condition of employment, Penhall required Mr. Vazquez-Alfaro to provide his PII.

53.     Mr. Vazquez-Alfaro provided his PII to Penhall and trusted that the company would use reasonable measures to protect it according to Penhall's internal policies and state law.

54.     Defendant deprived Plaintiff of the earliest opportunity to guard himself against the

Data Breach's effects by failing to notify him about it for three months.

55.    Plaintiff suffered actual injury from the exposure of his PII —which violates his rights to privacy.

56.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

57.    As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords, placing a credit freeze through the three main credit bureaus, and monitoring his credit information.

58.    Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

59.    Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's delay in informing Plaintiff and Class Members about the Data Breach.

60.    Indeed, following the Data Breach, Plaintiff discovered a fraudulent inquiry on his TransUnion report for Riverstone Apartments and a statement balance of $15,850 in relation to Riverstone Apartments. Plaintiff is unfamiliar with the apartment complex and certainly did not

make an inquiry nor rent an apartment he is unfamiliar with, suggesting that his PII is in the hands of cybercriminals and that he is a victim of identity theft.

61.    As a result of his identity being stolen and fraudulently used following the Data Breach, Plaintiff not only owes Genesis, a debt collection company, $15,850, but has also had his credit score significantly impacted.

62.    Additionally, following the Data Breach, Plaintiff has experienced spam texts and phone calls, further suggesting that his PII is in the hands of cybercriminals.

63.    Plaintiff has spent considerable time and effort attempting to restore his credit score, remove the inquiry for Riverstone Apartments, and address the $15,850 of debt fraudulently associated with him as a result of identity theft. This issue is not yet resolved and he anticipates spending additional time responding to this identity theft.

64.    Additionally, Plaintiff has had to purchase identity theft protection as a result of the Data Breach.

65.    Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

66.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

67.    As a result of Penhall's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

    a.    The loss of the opportunity to control how their PII is used;

b.  The diminution in value of their PII;

c.  The compromise and continuing publication of their PII;

d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.  Delay in receipt of tax refund monies;

g.  Unauthorized use of stolen PII; and

h.  The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

68.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

69.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

70.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover,

Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

71.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

72.    One such example of criminals using PII for profit is the development of "Fullz" packages.

73.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

74.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

75.    Defendant disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful

business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

76.     Defendant's failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

77.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

78.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

    a.   protect the personal customer information that they keep;

    b.   properly dispose of personal information that is no longer needed;

    c.   encrypt information stored on computer networks;

    d.   understand their network's vulnerabilities; and

    e.   implement policies to correct security problems.

79.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

80.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords

to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

81.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

82.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff is suing on behalf of himself and the proposed Class ("Class"), defined as follows:

> **All individuals residing in the United States whose personally identifiable information (PII) was compromised in the Penhall Data Breach, including all those who received notice of the breach.**

84.     Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

85.     Plaintiff reserves the right to amend the class definition.

86.     This action satisfies the numerosity, commonality, typicality, and adequacy

requirements under Fed. R. Civ. P. 23.

a.    **Numerosity**. Plaintiff's claim is representative of the proposed Class, consisting of potentially thousands of members, far too many to join in a single action;

b.    **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

c.    **Typicality**. Plaintiff's claim is typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d.    **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interest does not conflict with Class members' interests, and Plaintiff has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e.    **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

  i.    Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

  ii.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

  iii.  Whether Defendant was negligent in maintaining, protecting, and securing PII;

  iv.   Whether Defendant breached contract promises to safeguard Plaintiff's

and the Class's PII;

    v.    Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    vi.    Whether Defendant's Breach Notice was reasonable;

    vii.    Whether the Data Breach caused Plaintiff's and the Class's injuries;

    viii.    What the proper damages measure is; and

    ix.    Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

    f.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## COUNT I
### Negligence
**(On Behalf of Plaintiff and the Class)**

87.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

88.    Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

89.    Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless

17

disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

90.    Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

91.    Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's personal information and PII.

92.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII— whether by malware or otherwise.

93.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class and the importance of exercising reasonable care in handling it.

94.    Defendant breached its duties by failing to exercise reasonable care in supervising

its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff's and members of the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

95.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**Count II**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

96.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

97.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

98.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect consumers' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class's sensitive PII.

99.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

100.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

101.    Defendant had a duty to Plaintiff and the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and the Class's PII.

102.    Defendant breached its duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

103.    Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence *per se.*

104.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff

and members of the Class, Plaintiff and the Class would not have been injured.

105.    The injury and harm suffered by Plaintiff and the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

106.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

### Count III
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

107.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

108.    Given the relationship between Defendant and Plaintiff and Class Members, where Defendant became guardian of Plaintiff's and Class Members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' PII; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

109.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendant's relationship with them—especially to secure their PII.

110.    Because of the highly sensitive nature of the PII, Plaintiff and Class Members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known the reality of Defendant's inadequate data security practices.

111.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class Members' PII.

112.    Defendant also breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

113.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### Count IV
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

114.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

115.    Plaintiff and the Class entrusted their PII to Defendant at the time they entered into an employment relationship with Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

116.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

117.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to adequately safeguard and protect their PII, by failing to delete the information of Plaintiff

22

and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

118.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

119.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**Count V**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

120.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

121.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable PII. They also conferred a benefit on Defendant by providing their employment services.

122.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII and by retaining the benefit of Plaintiff's and the Class's labor.

123.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid its data security obligations at the expense of Plaintiff

and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and the Class, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

124.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

125.    Defendant acquired the monetary benefit and PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

126.    If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

127.    Plaintiff and Class Members have no adequate remedy at law.

128.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity how their PII is used; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to

prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

129.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm.

130.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them.

**COUNT VI**
**Invasion of Privacy/Intrusion upon Seclusion**
**(On Behalf of Plaintiff and the Class)**

131.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

132.    The State of Texas recognizes the tort of Intrusion upon Seclusion, and adopts the formulation of that tort found in the Restatement (Second) of Torts, which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977).

133.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

134.    Defendant owed a duty to its current and former employees, including Plaintiff and the Class, to keep this information confidential.

135.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' PII is highly offensive to a reasonable person.

136.    The intrusion was into a place or thing which was private and entitled to be private.

Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

137.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

138.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

139.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

140.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

141.    As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and rediscussion without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

142.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with its inadequate cybersecurity system and policies.

143.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for

monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

144.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.    Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.    Awarding attorneys' fees and costs, as allowed by law;

H.    Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting such other or further relief as may be appropriate under the circumstances.

### JURY DEMAND

Plaintiff hereby demands that this matter be tried before a jury.

DATED:  June 17, 2023                    Respectfully submitted,

*/s/ Joe Kendall*

Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone:  214/744-3000 / 214/744-3015 (fax)
jkendall@kendalllawgroup.com

Samuel J. Strauss*
sam@turkestrauss.com
Raina Borrelli*
raina@turkestrauss.com
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
T: (608) 237-1775
F: (608) 509-4423

***Attorneys for Plaintiff and the Proposed Class***
*\*Pro hac vice forthcoming*